**In re Dorvin Eugene SLOAN and Margaret Ann Sloan, Debtors.**

**No. 01–43161.**

United States Bankruptcy Court, W.D. Missouri.

April 7, 2003.

Joyce B. Kerber, Independence, MO, for Debtors.

Richard Fink, Kansas City, MO, trustee.

## MEMORANDUM OPINION

ARTHUR B. FEDERMAN, Chief Judge.

Debtors Dorvin and Margaret Sloan objected to the amended proof of claim filed by the Internal Revenue Service (the IRS) in the amount of $135,242.48. This is a core proceeding under 28 U.S.C. § 157(b)(2)(B) over which the Court has jurisdiction pursuant to 28 U.S.C. § 1334(b), 157(a), and 157(b)(1). The following constitutes my Findings of Fact and Conclusions of Law in accordance with Rule 52 of the Federal Rules of Civil Procedure as made applicable to this proceeding by Rule 7052 of the Federal Rules of Bankruptcy Procedure. For the reasons set forth below, I will overrule the Sloan's objection.

### FACTUAL BACKGROUND

Dorvin Sloan worked for Sloan Automotive Service, Inc. (Sloan Service) from approximately 1982 until December of 1992. Dorvin Sloan's parents started Sloan Service in 1967 to sell petroleum and provide automotive repair. At various times Sloan Service operated two or three Amoco stations. In 1982, when Dorvin returned

from a tour of duty in the United States Navy, he went to work for his father. He began as a night manager and auto mechanic for one of the service stations. He was responsible for customer service and the supervision of employees. He earned approximately $350.00 per week. Dorvin testified that he never owned any shares in Sloan Service, that, with the exception of tools he pledged worth $3000 as partial collateral for a loan his father executed, he never invested any money in Sloan Service, and that he never served on the Board of Directors of Sloan Service. Nonetheless, over time his duties changed. In 1985, Dorvin stated that he became a day manager and assumed responsibility for customer service, inventory control, and employee supervision. He ordered inventory and supplies, but he did not pay the invoices. His father set the salaries, determined the percentages to be paid for mechanics who operated as independent contractors, and wrote all payroll checks. Dorvin did have the authority to set gas prices each day based on his assessment of what the competition was charging.

Donna Sloan, Dorvin's mother, was in charge of the bookkeeping for Sloan Service until May of 1991, when she was diagnosed with cancer. In June of 1991 Dorvin assumed the bookkeeping. He also began to hire and fire employees. While he stated that he did not keep track of income or expenses, he began to make bank deposits and deliver all receipts to the bookkeepers. On May 13, 1991, Dorvin became a signatory on the checking account. In 1992 he and his father discussed how to make the stations more profitable. Dorvin assumed responsibility for paying for some inventory when it was delivered. Dorvin stated that the bookkeeper continued to report to his father, and that his father made all decisions regarding what to pay and when to pay it.

Dorvin said that he never made any deposits for employee withholding taxes. In 1991, Dorvin became aware, however, that the withholding taxes were not being paid. He and his father attended a meeting with the IRS regarding the taxes. At that time, the IRS representative contends that Dorvin was informed that he could be held personally responsible for Sloan Service's failure to pay withholding taxes. Dorvin and Margaret completed an IRS 433–A, Collection Information Statement for Individuals at approximately that time. Dorvin's father and the IRS entered into a repayment plan. Dorvin stated that he never asked his father if he was complying with the repayment plan, though his father informed him in 1992 that he was not making the payments. Dorvin continued to work for Sloan Service until December of 1992, shortly after his mother died. About one year later, Sloan Service ceased doing business.

On March 2, 1994, the IRS notified Dorvin that the IRS intended to assess a Trust Fund Recovery Penalty (TFRP) against him. In response to that letter, Dorvin stated that at the time he began doing the books, Sloan Service had failed to file 941's for the first and second quarter of 1991. He stated that he should not be held responsible for those taxes. He also stated that he left the business in December of 1992 before the 941 was due for the fourth quarter.

On July 21, 1994, however, Dorvin signed IRS Form 2751, Proposed Assessment of Trust Fund Recovery Penalty, agreeing to the assessment and collection of a TFRP for tax periods ending on March 30, 1991, June 30, 1991, September 30, 1991, December 31, 1991, March 31, 1992, June 30, 1992, September 30, 1992, and December 31, 1992, for a total assessment of $81,691.46. On November 14, 1994, the IRS assessed a TFRP penalty

against Dorvin Sloan in the agreed amount of $81,691.46, and began to garnish Dorvin's wages.

In 1995 Dorvin testified that he became ill and had to stop working. He did not hear from the IRS after 1995. He said he did not list the taxes on his bankruptcy schedules because he had forgotten about them.

On June 28, 2001, the Sloans filed a Chapter 13 bankruptcy petition. They scheduled $23,665.88 in general unsecured debt. On October 18, 2001, the IRS filed a proof of claim for priority unsecured debt in the amount of $146,736.40.[1] On November 28, 2001, this Court confirmed the Sloans' Chapter 13 plan. On August 21, 2002, the IRS filed an amended proof of claim in the amount of $135,242.48. The proof of claim designated the sum of $75,593.03 as Trust Fund Recovery Penalty (TFRP), the sum of $383.00 as income tax, and the sum of $59,266.45 as interest on the penalty incurred prior June 29, 2001.[2] On September 19, 2002, the Sloans filed an objection to the claim as to the TFRP and the interest. They do not object to the claim for income taxes in the amount of $383.00. The IRS responded and requested four months to complete discovery. On March 20, 2003, this Court held a hearing on the Sloans' objection.

## DISCUSSION

 On March 2, 1994, the IRS contacted Dorvin by Letter 1153(DO).[3] The letter informed him that the IRS intended to assess a penalty against him. Attached to that letter was IRS Form 2751, Proposed Assessment of Trust Fund Recovery Penalty. The Internal Revenue Manual pro-

vides that a taxpayer has one of three options once he receives Letter 1153(DO) and Form 2751:

(1) Once Letter 1153(DO) and Form 2751, Proposed Assessment of Trust Fund Recovery Penalty, have been properly delivered (IRM 5.7.4.7), the responsible party has 60 days (75 if the letter was addressed outside the United States) to respond. Allow an additional 5 days to enable the Service to receive and process all timely mailed protests. The responsible party can take the following actions in response to Letter 1153(DO):

· Agree to the assessment by signing Form 2751

· Appeal the proposed assessment

· Provide no response

(2) The ATFR application will not allow you to proceed until one of the following actions occurs:

· The 60 day time period expires

· Form 2751 is signed (which waives the 60 day restriction on notice and demand if signed by the taxpayer) IRM 5.7.4.7(2) and (3)

· A protest letter is received

· A jeopardy assessment is being made[4]

On March 24, 1994, Dorvin responded to Letter 1153(DO), as he was instructed to do. He stated that from June of 1991 until December of 1992 he was the general manager and bookkeeper for Sloan's Service. He claimed his duties during this period consisted of being in charge of "payroll, daily books, Inventory [sic] control, personnel manager, mechanic and cashier."[5] He stated that he did not know he was

---

1. Claim # 15.

2. Claim # 18.

3. Def. Ex. # 6.

4. IRM 5.7.6.1 (01–01–2003).

5. Def. Ex. # 7.

liable for taxes owed by the business, but since it was a family business, he would probably have accepted the position anyway. He felt he should not be held accountable for taxes not paid prior to June 30, 1990, and after September 30, 1992. He asked for a conference to discuss his proposal. There is no record before me of any conference that took place. Nonetheless, on July 21, 1994, Dorvin Sloan signed Form 2751, which assessed a total penalty in the amount of $81,691.46.[6] Above the signature line on Form 2751 is an "Agreement to Assessment and Collection of Trust Fund Recovery Penalty." It provides that Dorvin E. Sloan is the person responsible. It further provides that the signer consents to the following:

> the assessment and collection of the total penalty shown, which is equal to the amount of Federal employment taxes withheld from employee wages or to the amount of Federal excise taxes collected from patrons or members, and which was not paid over to the government by the business named above.[7]

The signer also waives "the privilege of filing a claim for abatement after assessment."[8] The IRS claims that on November 14, 1994, it assessed the TFRP. Dorvin Sloan did not present any evidence at the hearing that he protested the assessment. In fact, he admitted that he signed Form 2751. He testified at the hearing that he now objected to the proof of claim because he is not a responsible party and he should not be held liable for the taxes.

Unfortunately, Mr. Sloan needed to raise that argument with the IRS at the time of the assessment. While courts have held that the Form 2751 waiver is not a waiver of a right to a civil action against the United States, it is a waiver of the right to an administrative appeal and to file a claim for abatement after the assessment.[9] The Internal Revenue Manual provided a remedy for Mr. Sloan at the time of the demand letter. He failed to take advantages of those administrative remedies. I am now bound by those procedures and Mr. Sloan's own admission that he was a responsible party.

▮ Alternatively, I find that Dorvin Sloan was a responsible party under section 6672 of the Internal Revenue Code. Section 6672 provides that when a person responsible for collecting, accounting for, and paying over withholding taxes willfully fails to do so, he is liable for a 100 percent penalty equal to the total amount of the taxes held in trust.[10] Mr. Sloan testified that from June of 1991 until December of 1992 he acted as bookkeeper and manager of Sloan Service. He stated that he was aware the withholding taxes were not being paid, and that he did not inquire if his father was conforming to the payment plan. He wrote checks during this period and decided what bills to pay. Responsible persons are those who have the status, duty, and authority to avoid the corporation's default in collection or payment of withholding taxes.[11] I find that by his own admissions, Dorvin Sloan had that duty and status for the periods in question.

6. Def. Ex. # 8.

7. Id.

8. Id.

9. Stutz v. Internal Revenue Service, 846 F.Supp. 25, 25 (D.N.J.1994); PLR 1999917061 (April 30, 1999).

10. Olsen v. United States, 952 F.2d 236, 239 (8th Cir.1991).

11. Riley v. United States of America, 90 A.F.T.R.2d 2002–5090, 2002–2 U.S.T.C. P 50,-514, 2002 WL 1760856 (June 4, 2002).

I, therefore, will overrule Mr. and Mrs. Sloan's objection to the proof of claim filed by the IRS. An Order in accordance with this Memorandum Opinion will be entered this date.